**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MYRA MATUTE**, *et al.*, | |
| *Plaintiffs*, | **CIVIL ACTION NOS.** |
| **v.** | **5:24-cv-00988-JLS** |
| **THOMAS E. STRAUSS, INC.**, *et al.*, | **5:25-cv-00517-JLS** |
| *Defendants*. | |

| |
|---|
| **THE CHARTER OAK FIRE INSURANCE COMPANY,** As Subrogee of Thomas E. Strauss, Inc. T/D/B/A Amishview Inn and Suites, |
| *Plaintiff*, |
| **v.** |
| **PENTAIR COMMERCIAL ICE LLC**, *et al.*, |
| *Defendants*. |

## <u>MEMORANDUM OPINION</u>

**SCHMEHL, J.** */s/ JLS*                              **SEPTEMBER 11**, **2025**

      Now pending before the Court is the motion of Third-Party Defendant Weaver Companies, Inc. ("Weaver") to dismiss all claims asserted against it in the amended third-party complaint. Third-Party Plaintiffs Test Associates II, L.P. and Thomas E. Strauss, Inc. jointly assert two contract-based claims and a contribution claim arising from Weaver's alleged role in designing and constructing part of their hotel. Weaver contends that all claims against it are time-barred or otherwise deficient under Rule 12(b)(6). For the reasons that follow, the Court concludes that all

claims will be dismissed except for the contribution claim asserted by Thomas E. Strauss, Inc., which will proceed.

## I

In 2023, Plaintiffs Myra Matute, Andrew Fischer, and their son, V.F., booked a room at the AmishView Inn & Suites in Lancaster County, Pennsylvania. During their stay, a nighttime fire broke out near a vending-machine alcove down the hall. The family attempted to evacuate, but the intensity of the fire stopped them from reaching what they believed was their only exit near the alcove. Since the hallway was dark, the family did not see a "footbridge" at the other end of the hallway that would have provided them with an escape to another section of the hotel. The family returned to their room, fashioned a makeshift rope from bed linens, and tried to escape through second-story windows. Ms. Matute went first. But as she climbed out, she fell, landing on the concrete walkway below and damaging several vertebrae.

Now proceeding individually and on behalf of their minor son, Plaintiffs assert various torts against Defendants Test Associates II, L.P., the alleged owner of the hotel complex, and Thomas E. Strauss, Inc., its alleged operator. Test Associates II, L.P. and Thomas E. Strauss, Inc. have in turn filed an amended third-party complaint against numerous parties, including Weaver Companies, Inc. Relevant to this ruling, Third-Party Plaintiffs allege that Weaver was involved in designing and constructing the second-floor footbridge connecting the hotel's main building— where the family stayed—to another portion of the hotel, referred to by the parties as the "annex." In connection with those services, Third-Party Plaintiffs jointly assert three claims against Weaver—two sounding in contract and one alleging contribution. Currently, Weaver has moved to dismiss all claims asserted against it under Rule 12(b)(6).

**II**

To survive a 12(b)(6) motion to dismiss, the complaint must contain sufficient factual matter that, taken as true, states a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the Third Circuit, District Courts resolve such challenges by: (1) identifying the elements of each claim; (2) setting aside conclusory assertions; and (3) evaluating whether the remaining well-pleaded facts, taken as true, plausibly give rise to relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787-89 (3d Cir. 2016). Under this standard, the Court will analyze each challenged claim in turn.

**III**

**A**

The Court first addresses the two contract claims that the Third-Party Plaintiffs jointly assert against Weaver. Both claims allegedly arise from the same written agreement between Test Associates II, L.P. and Weaver, executed before construction commenced. First, through Count XVIII—styled as "Contractual Defense and Indemnity"—the Third-Party Plaintiffs seek to enforce Weaver's contractual duty to defend and indemnify under § 9.15.1, which provides:

> **§ 9.15.1** To the fullest extent permitted by law, the Contractor shall indemnify, defend and hold harmless the Owner, and its officers, directors, principals, consultants, agents, employees and assigns, Thomas E. Strauss, Inc. and Amish View Inn & Suites, LLC (hereafter for purposes of this Section, collectively referred to as the "Owner") for, from and against all claims, actions, damages, judgments, liability, losses, attorneys' fees, and expenses arising out of, or resulting from, performance of the work described in the Contract Documents between Contractor and Owner, but only to the extent caused in whole or in part by the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, provided that such claim, action, damage, judgment, liability, loss, fee, or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the work itself) The Contractor's agreement to indemnify, defend, and hold the Owner harmless from all claims, damages, losses, judgments, liability, fees, and expenses arising from bodily injury, sickness, disease or death includes any and all claims involving the Contractor's own employees or the employee's of its subcontractors; thus, only for purposes of this agreement to indemnify the Owner, the Contractor

3

expressly agrees to waive any and all rights, immunities and protections it may otherwise have under all applicable workers' compensation statutes.

Second, in Count XIX—styled as "Breach of Contract"—Third-Party Plaintiffs allege that Weaver breached the written agreement by failing to procure insurance coverage for claims of the type asserted by Plaintiffs and as required by § 17.1, which provides:

> **§ 17.1** The Contractor shall purchase from, and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, insurance for protection from claims under workers' compensation acts and other employee benefit acts which are applicable, claims for damages because of bodily injury, including death, and claims for damages, other than to the Work itself, to property which may arise out of or result from the Contractor's operations and completed operations under the Contract, whether such operations be by the Contractor or by a Subcontractor or anyone directly or indirectly employed by any of them. This insurance shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater, and shall include contractual liability insurance applicable to the Contractor's obligations under Section 9.15. Certificates of Insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. Each policy shall contain a provision that the policy will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. The Contractor shall cause the commercial liability coverage required by the Contract Documents to include: (1) the Owner, the Architect and the Architect's Consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

In attacking both counts, Weaver makes many arguments. The Court starts with the argument that the following contractual clause of repose bars these claims:

> **§ 19.4 COMMENCEMENT OF STATUTORY LIMITATION PERIOD**
>
> The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the period specified by applicable law, but in any case not more than ten years after the date of Substantial Completion of the Work. The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 19.4.

Applied here, Weaver reasons that, construed in the light most favorable to the non-movant, the pleadings establish that Weaver's work was substantially complete in 2014. Therefore, because the third-party complaint was filed in 2025, the Third-Party Plaintiffs' claims fall outside the ten-year repose period and are time-barred, subject to dismissal.

In rebuttal, Third-Party Plaintiffs advance several arguments. First, Third-Party Plaintiffs argue that the contractual clause of repose does not apply to the contract claims asserted by Thomas E. Strauss, Inc. They note that the only parties named in, and bound by, the underlying contract are Test Associates II, L.P. and Weaver, and that Thomas E. Strauss, Inc. was not a party to the agreement. After reviewing the contract, the Court concurs. Clearly, only Test Associates II, L.P. and Weaver are parties to the agreement. The corollary to that conclusion, however, is that the Court must dismiss Thomas E. Strauss, Inc.'s claims, which are premised on contract to which it is not a party. For a party not in privity has no right to sue on a contract. *See Borough of Berwick v. Quandel Grp., Inc.,* 655 A.2d 606, 608 (Pa. Super. Ct. 1995); *see also Johnson v. Pa. Nat'l Ins. Cos.*, 594 A.2d 296, 298-99 (Pa. 1991) ("[T]hird party beneficiaries are bound by the same limitations in the contract as the signatories of that contract."). Thus, Counts XVIII and XIX—to the extent that they are brought by Thomas E. Strauss, Inc.—are dismissed.

So, the three remaining claims brought by Test Associates II, L.P., a party to the underlying contract, must deal head-on with the repose provision. Test Associates attempts to avoid the force of this provision by pointing out that § 19.4's heading labels the provision a "statutory limitation period," and not a period of repose. Its argument goes on to suggest that the Court must measure the timeliness of Test Associates' present claims from when its present causes of action accrued, rather than from "10 years after Substantial Completion of the Work." After careful review however, the Court disagrees.

Test Associates reads too much into the heading of § 19.4. For although a heading, title, or caption aids, sometimes, in construing related text, § 19.4's heading does not meaningfully influence the operative language that follows. Justice Murphy, over 75 years ago, described the scenario aptly:

> For interpretative purposes, [headings] are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

*Bhd. of R. R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 529 (1947). Here, the text of the repose provision is plain: "[A]ll claims relating to the Contract must be brought not more than 10 years after Substantial Completion of the Work." There is no ambiguity. The provision clearly establishes a repose period, with the deadline to file a claim running from the defined completion date, not from any subsequent accrual of a cause of action.

Anticipating that the Court might reach this conclusion, Test Associates goes on to contend that, even if § 19.4 constitutes a contractual clause of repose, it is unenforceable because Pennsylvania's statute of repose prescribes a twelve-year period for certain construction-related actions, such as this one. *See* 42 Pa. Cons. Stat. § 5536(a). Test Associates adds that "[a]llowing private parties to contractually shorten this period would undermine the legislature's intent in establishing these time-based protections."

This argument is unavailing. It overlooks the plain text of 42 Pa. Cons. Stat. § 5501, which expressly provides that, for any "time specified in or pursuant to [Chapter 55]," parties may agree in writing to "a shorter time which is not manifestly unreasonable." The twelve-year repose period set forth in § 5536 falls squarely within Chapter 55 and is thus clearly governed by § 5501(a). Accordingly, as occurred here, the parties may reduce the statutory period by a not-manifestly-unreasonable written agreement. Presently, no party has argued that shortening the repose period

from twelve years to ten years is manifestly unreasonable. The Court thus applies the plain language of the repose clause to bar the claims asserted by Test Associates—namely, the two contract claims previously discussed and the contribution claim arising from Weaver's provision of design and build services.

B

What remains of the amended third-party complaint against Weaver, then, is only the contribution claim asserted by Thomas E. Strauss, Inc. In challenging it, Weaver opens by making a series of arguments thoughtfully articulating why a direct negligence action by Strauss against Weaver fails. Weaver does so because the Third-Party Plaintiffs styled Count XVII as "NEGLIGENCE V. WEAVER COMPANIES, INC. DBA WEAVER CONSTRUCTION." In response, however, Strauss clarifies that Count XVII, despite its heading, is properly understood as a contribution claim rather than a direct negligence claim.

The distinction, while subtle, is important. A tortfeasor's right to contribution from joint tortfeasors stems not from tort, but from principles of quasi-contract and equity. *See Pennsylvania Nat. Mut. Cas. Ins. Co. v. Nicholson Const. Co.*, 542 A.2d 123, 125 (Pa. Super. Ct. 1988). Codified in the Uniform Contribution Among Tortfeasors Act, one may enforce the equitable duty to share liability where separate tortious parties contribute to an indivisible injury. *See Baker v. AC&S, Inc.*, 729 A.2d 1140, 1146 (Pa. Super. Ct. 1999); *Mattia v. Sears, Roebuck & Co.*, 531 A.2d 789, 791 (Pa. Super. Ct. 1987); *see generally* 42 Pa. Cons. Stat. §§ 8321-27.

Here, although Count XVII is captioned as a "negligence" claim, its factual allegations make clear that Strauss seeks to impose contribution-based liability on Weaver for Weaver's own allegedly independent negligent acts that contributed to Plaintiffs' injuries. And moreover, as previously discussed, while headings are important, they do not dispositively control related text.

The Court thus concludes that the content of Count XVII sufficiently sets forth a claim for contribution. *Cf. Childers v. Power Line Equip. Rentals, Inc.*, 681 A.2d 201, 213 (Pa. Super. Ct. 1996). Weaver's opening-brief arguments attacking a direct negligence theory are consequently inapposite. And insofar as Weaver's reply brief challenges the factual existence of any direct liability to Plaintiffs, those arguments are more appropriately reserved for the summary-judgment stage, provided that no genuine dispute of material fact exists. So, in sum, only the contribution claim asserted by Thomas E. Strauss, Inc. will proceed.

**IV**

For the foregoing reasons, Weaver's motion to dismiss will be granted in part and denied in part. The contract claims asserted by Test Associates II, L.P. and Thomas E. Strauss, Inc. are dismissed as untimely or otherwise barred. The contribution claim asserted by Thomas E. Strauss, Inc., however, states a plausible basis for relief and will proceed. The contribution claim by Test Associates II, L.P. will not. An appropriate Order follows.