### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYRA MATUTE, *et al*.,<br><br>     *Plaintiffs*,<br><br>     v.<br><br>THOMAS E. STRAUSS, INC., *et al*.,<br><br>     *Defendants*. | CIVIL ACTION<br>5:24-cv-00988-JLS |

### M E M O R A N D U M

**SCHMEHL, J.** */s/ JLS*                                                    **Tuesday, August 11, 2026**

This case arises from a nighttime fire at a Lancaster County hotel and the Matute family's unsuccessful attempt to escape it.  What might otherwise have been a straightforward tort action has become more complicated because, beyond litigating the origin of the fire, the parties dispute whether the hotel's egress route was defectively designed in that an allegedly viable evacuation route across a footbridge to another portion of the hotel was not adequately marked by illuminated exit signage.  That issue and the role of Third-Party Defendant Weaver Companies, Inc. ("Weaver")—the general contractor responsible for constructing the footbridge connecting the older portion of the hotel, where the Plaintiffs stayed, to the newly constructed portion—are now before the Court.

Weaver, more specifically, has moved for summary judgment on the contribution claim asserted against it by hotel operator and Third-Party Plaintiff Thomas E. Strauss, Inc.—the only third-party claim against Weaver that remains following an earlier motion to dismiss.  *See generally Matute v. Thomas E. Strauss, Inc*., No. 5:24-cv-00988-JLS, 2025 WL 2637231, at *4 (E.D. Pa. Sept. 12, 2025).  Because the present record reveals the existence of genuine disputes of material fact surrounding Weaver's responsibility for design-related modifications that may have

affected the required egress signage, summary judgment is not warranted.  Accordingly, the motion is denied.

## I

As previously detailed, the second amended complaint alleges that, in 2023, Plaintiffs Myra Matute, Andrew Fischer, and their son, V.F., booked a room at the AmishView Inn & Suites in Lancaster County, Pennsylvania.  During the family's stay, a nighttime fire broke out near a vending-machine alcove down the hall.  The family attempted to evacuate, but the intensity of the fire stopped them from reaching what they believed was their only exit near the alcove.

Since the hallway was dark, the family did not see a "footbridge" at the other end of the hallway that would have provided them with an escape to another section of the hotel.  The family returned to their room, fashioned a makeshift rope from bed linens, and tried to escape through second-story windows.  Ms. Matute went first.  But as she climbed out, she fell, landing on the concrete walkway below and damaging several vertebrae.

Plaintiffs, proceeding individually and on behalf of their minor son, now assert various tort claims against Defendants Test Associates II, L.P., the alleged owner of the hotel complex, and Thomas E. Strauss, Inc., its alleged operator.  Test Associates and Strauss, in turn, have filed a second amended third-party complaint, ECF No. 230, against numerous entities, including Weaver Companies, Inc.

Relevant here, Strauss alleges that Weaver participated in the design and construction of the second-floor footbridge connecting the hotel's original building—where Plaintiffs were staying—to another portion of the property, referred to as the "annex."  Strauss also alleges that Weaver was involved in determining the placement of signage for the bridge, including signs for emergency exits.  As explained in the Court's earlier memorandum, the sole surviving third-party claim against Weaver is Strauss's contribution claim.  Weaver now moves for summary judgment

on that remaining claim.  Mot. for Summ. J., ECF No. 223; Suppl. to Mot. for Summ. J., ECF No. 318.  Its motion has drawn opposition from Thomas E. Strauss and cross-claimants Clark, Inc. and Meister Cox Architects, P.C.

## II

Federal Rule of Civil Procedure 56 allows the Court to enter summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Before analyzing the surviving third-party claim against Weaver, the Court observes that the moving party bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once that initial showing is made, the burden then shifts to the non-moving party to go beyond the pleadings and come forward with specific, material facts that present "a genuine issue for trial."  *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations omitted).  A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and it is "material" only if it might affect the outcome under the applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.  242, 248 (1986).  In conducting this analysis, the Court must review the record as a whole and draw all reasonable inferences in favor of the non-movant.  *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (internal citations omitted).

## III

Weaver's summary-judgment argument is straightforward.  It contends that, although it entered into a contract to design and build the hotel's new annex, the footbridge connecting that addition to the existing hotel, and certain modifications to the existing hotel's structure,

3

Pennsylvania law permits a general contractor to delegate design-related responsibilities—and the corresponding duties imposed by tort law—to subcontractors. *See Leonard v. Commonwealth*, 771 A.2d 1238, 1242 (Pa. 2001) ("[O]ne who engages an independent contractor is not vicariously liable for the negligence of that contractor. It is because an independent contractor is not subject to control by the one hiring him that there is no basis to hold the latter party liable for his acts." (internal citations omitted)). Weaver claims, applying that rule here, that it is now entitled to summary judgment because it evidently delegated those duties to others.

The difficulty with Weaver's argument is that the present record creates a genuine dispute as to whether those design responsibilities were, in fact, fully delegated. Meister Cox Architects, P.C., one of Weaver's design subcontractors and a cross-claimant and fellow Third-Party Defendant, has identified evidence showing that construction of the annex required modifications to the existing hotel structure, including the conversion of an old guest room into storage space. Ex. B at 2, ECF No. 322-2. That conversion resulted in a loss of usable space.

To mitigate that loss, Weaver and the hotel owner at some point discussed subdividing an existing room. Specifically, Meister Cox points to March 2013 meeting minutes involving the "Amish View Inn team, Weaver Construction team, and Meister Architects," which reflect that Weaver and the hotel owner were aware that eliminating one room would result in a loss of usable space and discussed mitigating that loss by subdividing an existing room. *Id.*

Ultimately, the parties agree that a room on the second floor was subdivided. That is significant because, as one expert has opined, the subdivision altered the travel distances along the adjoining hallway such that an illuminated exit sign was required near the entrance to the footbridge. Ex. A at 4, ECF No. 322-1. Meister Cox further notes that it was unaware of the eventual subdivision and that its architectural drawings submitted to the municipality did not depict

4

the subdivided room.  Meister Cox also points to an April 17, 2013, email stating that "Bill Meister will draw the one room area of the existing building where the connection occurs but none of the renovations in the East wing."  Ex. D at 2, ECF No. 322-4.  The question, then, is who designed the subdivided-room layout and renovations to the east wing?

Weaver responds by pointing to Kenneth Weaver's Rule 30(b)(6) deposition where he testified that the subdivision design was "made in the field" at the owner's direction and that Weaver did nothing more than implement the owner's plans and specifications.  Ex. 5 at 8, ECF No. 318-5.  Weaver accordingly invokes the *Spearin* doctrine, contending that it, as a mere construction contractor, cannot be held liable for defects resulting from a design furnished by the owner.  *See generally Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 657 F. Supp. 2d 545, 558 (E.D. Pa. 2009) (citing *United States v. Spearin*, 248 U.S. 132 (1918)); *see also id.* ("Design specifications describe in detail which materials are to be utilized and the manner in which the work is to be performed.").

Taken altogether, and viewed against the absence of any architectural drawing depicting a room split, the March 2013 meeting minutes, and the April 2013 email, the Court concludes that Weaver's characterization of the room split as a spontaneous, owner-directed field change presents a credibility question that cannot be resolved at summary judgment.  A reasonable factfinder could indeed conclude that Weaver participated in designing the room subdivision, failed to submit the resulting modification to its design professionals for review or incorporation into the architectural plans, and thereby improperly delegated its design responsibilities.

**IV**

For these reasons, Weaver's motion for summary judgment is denied. Whether Weaver fully delegated the relevant design responsibilities to a point that would absolve them of liability is a question for trial.  An appropriate order follows.